ELECTRONICALLY FILED
2013-May-20  10:46:32
60CV-13-2103

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### ____ DIVISION

**ADVANCED INSURANCE**
**BROKERAGE OF AMERICA, INC. and**
**J. MATT LILE**                                                **PLAINTIFF**

**VS.**                          **CASE NO. _____**

**MUTUAL MARINE OFFICE, INC. and**
**GOTHAM INSURANCE COMPANY**                  **DEFENDANTS**

### COMPLAINT

COME NOW, Advanced Insurance Brokerage of America, Inc. and J. Matt Lile, by and through their attorneys, Newland & Associates, PLLC, and for their Complaint against Mutual Marine Office, Inc. and Gotham Insurance Company, state and allege as follows:

### I.       PARTIES, JURISDICTION, AND VENUE

1.       Mr. Lile is a resident of Pulaski County, Arkansas.

2.       Advanced Insurance Brokerage of America, Inc. ("AIBA") is an Arkansas corporation, with its registered agent in Pulaski County, Arkansas.

3.       Mutual Marine Office, Inc. ("MMO") is a New York corporation, and has contractually consented to jurisdiction in the courts of the State of Arkansas.  Service of process may be made upon the Senior Claims Officer of Mutual Marine Office, Inc., 919 Third Ave. 10th Floor, New York, NY 10022, or his designee.

4.       Gotham Insurance Company ("Gotham") is an insurance company organized under the laws of New Jersey, and whose registered agent for service of process is F. Papalia at 4122 Mt. Kemble Avenue, Suite 300 C, Morristown, NJ, 07960.  Gotham has contractually consented to jurisdiction in the courts of the State of Arkansas.

5.       Jurisdiction is proper in this Court pursuant to Ark. Code Ann. § 16-13-201.

EXHIBIT "1"

6.      Venue is proper in this Court pursuant to Ark. Code Ann. § 16-55-213.

## II.      FACTS

7.      Plaintiff is the former Chief Executive Officer of AIBA.

8.      AIBA was formerly in the business of acting as a third-party administrator for single employer, self-funded group medical plans.

9.      Gotham issued a policy of Miscellaneous Errors and Omissions insurance to AIBA on or about March 17, 2009 ("the Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "A," and incorporated herein by reference.

10.     The term of the Policy was February 28, 2009, to February 28, 2010.

11.     Pursuant to the Policy, Gotham agreed to pay, on behalf of AIBA and covered persons, any damages and claims expenses arising out of a negligent act, error, or omission even if such act is groundless, false or fraudulent, if the negligent act, error, or omission took place in the rendering or failure to render Professional Services. *See* Exhibit A, Part I, Paragraph A.

12.     "Professional Services" are defined as "third party administrator of employee benefits, placement, [and] administration of stop loss."

13.     Pursuant to the Policy, Gotham also agreed that it had the duty to defend any claims made against the covered persons and to pay for the cost of defense of any lawsuits made against the covered persons. *See* Exhibit A, Part I, Paragraph B.

14.     Any "present or former principal, partner, officer, director, or employee of AIBA or its Subsidiaries" are considered covered persons under the Policy. *See* Exhibit A, Part I, Paragraph E (2). *See* Exhibit A, Declarations, Paragraph V.

15.     MMO is the Authorized Representative and Managing General Agent of Gotham and executed the Policy.

16.     Any claims under the Policy were to be reported to MMO.

17.     MMO was the entity that made determinations regarding whether to approve or deny coverage under the Policy.

18.     On or about March 19, 2010, Beard Engineering, Inc. ("Beard") filed a lawsuit in the Circuit Court of Saline County, Arkansas, against AIBA and Mr. Lile, arising out of certain Professional Services that AIBA provided to Beard Engineering, Inc. as third-party administrator for Beard's single employer self-insured group medical plan ("the Beard Lawsuit").

19.     The Beard Lawsuit involves allegations that AIBA and Mr. Lile made certain errors and omissions as third-party administrator.

20.     Beard served AIBA with the lawsuit on or about April 28, 2010.

21.     Beard served Mr. Lile with the lawsuit on or about July 2, 2010.

22.     AIBA and Mr. Lile provided notice of the Beard Lawsuit to Gotham and MMO, and requested that Gotham defend the lawsuit as required by the Policy.

23.     On or about May 20, 2010, Gotham and MMO denied coverage for the Beard Lawsuit, and refused to defend or pay for the cost to defend the Beard Lawsuit as required by the terms of the Policy.

24.     As a result of Gotham and MMO denying the claim, AIBA and Mr. Lile were required to assume and pay for their own defense of the Beard Lawsuit.

25.     AIBA and Mr. Lile have incurred substantial expense defending the Beard Lawsuit, in excess of $14,000.

26.     On or about June 3, 2010, JM Oilfield Service, Inc. ("JM Oilfield") filed a lawsuit in the Circuit Court of Pulaski County, Arkansas, against AIBA and Mr. Lile arising out of

certain Professional Services that AIBA provided to JM Oilfield as third-party administrator for its single employer self-insured group medical plan ("the JM Oilfield Lawsuit").

27. Thereafter, Mr. Lile and AIBA provided notice of the JM Oilfield Lawsuit to MMO and Gotham, and requested that Gotham defend the lawsuit as required by the Policy.

28. On or about July 21, 2010, Gotham and MMO denied coverage for the JM Oilfield Lawsuit, and refused to defend or pay for the cost to defend the Beard Lawsuit as required by the terms of the Policy.

29. As a result of Gotham and MMO denying the claim, AIBA and Mr. Lile were required to assume and pay for their own defense of the JM Oilfield Lawsuit.

30. AIBA and Mr. Lile have incurred substantial expense defending the JM Oilfield Lawsuit, in excess of $11,000.

31. On or about August 12, 2010, Indigo LR, LLC and Chris Eakin filed a lawsuit in the Circuit Court of Pulaski County, Arkansas, against AIBA and Mr. Lile, which was later removed to federal court ("the Indigo Lawsuit"). The allegations in the Indigo Lawsuit arise out of Professional Services that AIBA provided to Indigo for its self-insured employee group medical plan.

32. Mr. Lile and AIBA provided timely notice of the Indigo Lawsuit to MMO and Gotham, and requested that Gotham defend the lawsuit as required by the Policy.

33. On or about November 10, 2010, Gotham and MMO denied coverage for the Indigo Lawsuit, and refused to defend or pay for the cost to defend the Indigo Lawsuit as required by the terms of the Policy.

34. As a result of Gotham and MMO denying the claim, AIBA and Mr. Lile were required to assume and pay for their own defense of the Indigo Lawsuit.

35.     Ultimately, the court dismissed the Indigo Lawsuit, and the Plaintiff filed an appeal to the Eighth Circuit, which appeal is still pending.

36.     AIBA and Mr. Lile have incurred substantial expense defending the Indigo Lawsuit, in excess of $45,000.

37.     On or about November 10, 2009, the Insurance Commissioner for the State of Arkansas filed a lawsuit in the Circuit Court of Pulaski County, Arkansas against AIBA and Mr. Lile arising out of certain Professional Services that AIBA provided as third-party administrator for single employer self-insured group medical plans ("the Commissioner Lawsuit").

38.     AIBA and Mr. Lile timely notified MMO and Gotham of the Commissioner Lawsuit, and requested that Gotham defend the lawsuit as required by the Policy.

39.     MMO and Gotham denied coverage for the Commissioner Lawsuit, and refused to defend or pay for the cost to defend the Commissioner Lawsuit as required by the terms of the Policy.

40.     AIBA and Mr. Lile have incurred substantial expense defending the Commissioner Lawsuit, in excess of $100,000.

41.     The Insurance Commissioner for the State of Arkansas later voluntarily dismissed the Commissioner Lawsuit.

42.     On or about May 29, 2012, the Insurance Commissioner for the State of Arkansas re-filed its lawsuit against AIBA and Mr. Lile in the Circuit Court of Pulaski County, Arkansas, alleging that AIBA and Mr. Lile negligently administered several single employer health benefit plans ("the Second Commissioner Lawsuit").

43.     Mr. Lile and AIBA provided timely notice of the Second Commissioner Lawsuit to MMO and Gotham, and requested that Gotham defend the lawsuit as required by the Policy.

44.     On or about July 22, 2012, Gotham and MMO denied coverage for the Second Commissioner Lawsuit, and refused to defend or pay for the cost to defend the Second Commissioner Lawsuit as required by the terms of the Policy.

45.     As a result of Gotham and MMO denying the claim, AIBA and Mr. Lile were required to assume and pay for their own defense of the Second Commissioner Lawsuit.

46.     AIBA and Mr. Lile have incurred substantial expense defending the Second Commissioner Lawsuit.

**III.     FIRST CAUSE OF ACTION—BAD FAITH AGAINST GOTHAM AND MMO**

47.     AIBA and Mr. Lile incorporate by reference all allegations contained in Paragraphs 1 through 46 as if set forth word for word.

48.     No valid controversy exists regarding Gotham's duty to defend and cover the aforementioned claims under the Policy.

49.     The Policy requires Gotham to defend and cover claims arising from AIBA's and Mr. Lile's rendering of professional services.

50.     Each of the aforementioned lawsuits, the Beard Lawsuit, the JM Oilfield Lawsuit, the Indigo Lawsuit, and the Commissioner Lawsuit, make allegations that AIBA and Mr. Lile made errors and omissions in the rendering of professional services.

51.     MMO and Gotham had no valid reason to deny the claims.

52.     MMO and Gotham knew they had no valid reason to deny the claims.

53.     MMO and Gotham wrongfully denied the aforementioned claims in order to avoid their obligations under the Policy.

54.     MMO and Gotham's conduct was dishonest, oppressive, and malicious, which may be inferred from the circumstances.

55.     MMO and Gotham acted willfully and wantonly in denying the claims.

56.     AIBA and Mr. Lile have been damaged as a result of Gotham's and MMO's conduct because AIBA and Mr. Lile have incurred substantial expense defending each of the aforementioned lawsuits.

57.     AIBA and Mr. Lile are entitled to compensatory damages and punitive damages against MMO and Gotham for their tortious conduct in denying the claims.

## IV.     SECOND CAUSE OF ACTION—BREACH OF CONTRACT

58.     AIBA and Mr. Lile incorporate by reference all allegations contained in Paragraphs 1 through 57 as if set forth word for word.

59.     Gotham had a contractual obligation to defend AIBA and Mr. Lile in the Beard Lawsuit, the JM Oilfield Lawsuit, the Indigo Lawsuit, and the Commissioner Lawsuit, regardless of whether AIBA's and/or Mr. Lile's alleged error or omission is alleged to be groundless, false, or fraudulent.

60.     Gotham failed to perform its contractual obligation because it refused to defend AIBA and Mr. Lile in the lawsuits.

61.     Gotham's failure to perform their contractual obligation constitutes a breach of the Policy.

62.     AIBA and Mr. Lile have been damaged because they were required to assume and pay for their own costs of defense in each of the aforementioned lawsuits.

63.     AIBA and Mr. Lile are entitled to damages for breach of contract.

64.     Pursuant to Ark. Code Ann. § 23-79-208, AIBA and Mr. Lile are entitled to damages from Gotham in the amount of the loss they have or will suffer (i.e., the amount of the cost of defense as well as any judgment rendered against AIBA and Mr. Lile in the

aforementioned lawsuits), as well as 12% upon the amount of the loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss.

## V.   DEMAND FOR JURY TRIAL

65.    AIBA and Mr. Lile pray for a trial by jury on all issues.

## VI.   RESERVATION OF RIGHTS

66.    AIBA and Mr. Lile specifically reserve the right to bring any additional causes of action against the Defendants, or additional defendants, and to amend this Complaint as necessary.

WHEREFORE, AIBA and Mr. Lile pray that this Court grant the relief requested herein, for punitive damages in an amount to deter this type of conduct in the future, for their costs and attorneys' fees incurred herein, and for all other just and proper relief to which they may be entitled.

Respectfully Submitted,

Newland & Associates, PLLC
2228 Cottondale Lane, Suite 200
Little Rock, AR 72202
(501) 221-9393
(501) 221-7058 (fax)

_____
Joel F. Hoover, Ark. Bar No. 2001031
Ashlea Brown, Ark. Bar No. 2007197

R-17-2009  14:20       Excel Underwriters Inc.                          8567677590    P.001

## MUTUAL MARINE OFFICE, INC.
919 Third Avenue, 10 th floor
NewYork, NY 10022
Phone:  212-551-0600
Fax:  212-986-1310

In consideration of the payment of premium, in reliance upon the statements in the Declarations and the Application, and subject to all of the terms of this Policy, the Company agrees with the Named Insured as follows:

### Miscellaneous Errors and Omissions
### CLAIMS MADE FORM

COMPANY:          Gotham Insurance Company
POLICY NUMBER:    IA10018209

### DECLARATIONS

| | | |
|---|---|---|
| I. | NAMED INSURED: | Advanced Insurance Brokerage of America, Inc. |
| II. | NAMED INSURED ADDRESS: | 1525 Merrill Drive, Suite 2000<br>Little Rock, AR  72211 |
| III. | POLICY PERIOD: | 02/28/2009 to 02/28/2010 |
| | | Beginning and ending at 12:01 A.M. Local Standard Time at the address of the Named Insured. |
| IV. | RETROACTIVE DATE: | 10/27/2004 |
| V. | PROFESSIONAL SERVICES: | Third Party Administrator of employee benefits, placement, administration of stoploss |

VI.  LIMIT OF LIABILITY
    A. LIMIT EACH CLAIM, INCLUDING CLAIMS, EXPENSES:    $2,000,000
    B. LIMIT IN THE AGGREGATE FOR ALL CLAIMS
       INCL CLAIMS EXPENSE:    $2,000,000

VII  DEDUCTIBLE OR SELF-INSURED RETENTION:    $25,000
    (Applicable to each Claim, incl. Claims Expenses)

VIII  PREMIUM AND REPORTING:
    A.    DEPOSIT PREMIUM:    $25,000.00
    B.    MINIMUM PREMIUM:    $25,000.00
        PREMIUM ADJUSTMENT AND REPORTING.
        The premium Charged for this policy has been
        calculated as follows:    FLAT

### NOTE: 25% of MINIMUM DEPOSIT PREMIUM IS EARNED AT INCEPTION

Policy Number IA10018209

Mutual Marine Office, Inc.
Pacific Mutual Marine Office, Inc.
Mutual Marine office of the Midwest, Inc.

Page 1 of 2

BrokerPRO<sup>SM</sup>



EXHIBIT
A

On or before the 30th day following the expiration of this Policy, the insured agrees to submit to Mutual Marine Office, Inc. a report of Gross Revenues during the Policy Period.

1. Earned Premium will be calculated at the above rate, and any premium in excess of the Deposit Premium shall be immediately due and payable upon furnishing the aforesaid report.

2. In the event that the Earned Premium is less than the Deposit Premium but more than the Minimum Premium, the Company will return the difference between the Deposit Premium and the Earned Premium.

3. In the event that the Earned Premium is less than the Minimum Premium, the Minimum Premium will apply and the Company will return the difference (if any) between the Deposit Premium and the Minimum Premium.

AUDIT:  The insured shall keep an accurate record of Gross Revenues during the Policy Period.  Mutual Marine Office, Inc. through its authorized representative shall be privileged to inspect the books and records of the Insured pertaining to the subject matter of this insurance at all reasonable times during the life of this Policy and for twenty four (24) months after the expiration or termination date of this Insurance. Any evasion by the Insured in connection with statements shall void such policy and shall be an absolute defense to any suit or action brought under such policy.

CANCELLATION: In the event of cancellation, the insured agrees to furnish the company with an accurate statement of Gross Revenues for the period from the attachment date of this Policy up to and including the date of cancellation, such statement to be the basis for premium adjustment as provided herein.  Revised Minimum and Deposit Premiums will be calculated as set forth below, and the Earned Premium for the amended Policy Period will be applied against these revised Minimum and Deposit Premiums in accordance with Declaration VII(C).

1. In the event of cancellation by the Company:

a) The Revised Deposit Premium will be calculated by subtracting the pro rata return premium due from the Deposit Premium set forth in Declaration VII(A).

b) The revised Minimum Premium will be determined by multiplying the Minimum Premium set forth in Declaration VII(B) times the fraction created by dividing the Revised Deposit Premium by the Deposit Premium set forth in Declaration VII(A).

2. In the event of cancellation by the Named Insured:

a) The revised Deposit Premium will be calculated by subtracting the "short-rate return premium" due from the Deposit Premium.

b) Unless modified by specific endorsement, the revised Minimum Premium will be the same as the revised Deposit Premium.

3. Except where specifically amended by statute to the contrary, cancellation by a Premium Finance Company shall be deemed to be cancellation by the Named Insured.

 DEFINITIONS: Whenever used in these Declarations, the following definitions shall apply:

1. "Short-rate return premium" shall be defined to mean the amount obtained by multiplying the pro rata return premium times 90%.

2. "Gross Revenues" means the gross amount of money charged and received by the Named Insured for Professional Services during the Policy Period, and includes taxes, other than taxes which the Named Insured collects as a separate item and remits directly to a governmental division.

3. "Premium Finance Company" means any company which agrees to pay your premium in whole or in part and which has the legal authority to cancel this Policy.

# PROFESSIONAL LIABILITY
# COVERAGE FORM CLAIMS-MADE COVERAGE

Throughout this document, the word "Insured" means any person or entity qualified as such under Part I. E. "Covered Persons and Entities."

Other words and phrases that appear in bold have special meaning. Refer to Part III. Definitions.

PART I.           Insuring Agreements

A.    Covered Services

The Company will pay, on behalf of the Insured, Damages and associated Claim Expenses arising out of a negligent act, error, or omission resulting in Claim for financial loss, property damage, Advertising Liability, or Personal Injury, even if such Claim is groundless, false or fraudulent, provided that:

1.  The negligent act, error, or omission took place in the rendering of or failure to render Professional Services; and,
2.  The negligent act, error, or omission took place in the Covered Territory; and,
3.  The negligent act, error, or omission took place after the Retroactive Date shown in the Declarations; and,
4.  The Claim is first made against the Insured and reported to the Company during the Policy Period.

B.    Defense and Settlement

The Company has the right and duty to defend, subject to the provisions in this Policy and the Limits of Liability, any Claim to which coverage under this Policy applies.

The Company has the right to select defense counsel; provided however, if applicable law allows the Insured to control the selection of counsel because a potential conflict of interest between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate counsel, and the Insured agrees to direct such defense counsel to cooperate with the Company.

The reasonable fees and costs incurred by counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses.

The Company will not settle any Claim without the consent of the Named Insured. If, however, the Named Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any proceedings in connection with such Claim, then the Company shall not be obligated to pay Claim Expenses incurred subsequent to such refusal. Withholding of consent or refusal shall be deemed a refusal. Furthermore, the Company's liability for such Claim shall not exceed the amount for which the Claim could have been so settled and Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the Limits of Liability, of this Policy.

C.   Policy Limits

Regardless of the number of persons or entities insured or included in Part I. D. **Covered Persons or Entities**, or the number of claimants or **Claims** made against the Insured:

1.   The maximum liability of the Company for **Damages** and **Claim Expenses** resulting from each **Claim** made against the Insured during the **Policy Period** and the **Extended Reporting Period**, if purchased, shall not exceed the amount shown in the Declarations for each **Claim**;

2.   The maximum liability of the Company for all **Damages** and **Claim Expenses** as a result of all **Claims** first made against the Insured during the **Policy Period** and the **Extended Reporting Period**, if purchased, shall not exceed the amount shown in the Declarations in the aggregate.

The Company shall not be obligated to pay any **Claim** for **Damages** or defend any **Claim** after the applicable **Limit of Liability** has been exhausted by payment of judgments, settlements, **Claim Expenses** or any combination thereof.

**Claim Expenses** are a part of and not in addition to the applicable Limits of Liability. Payment of **Claim Expenses** by the Company reduces the applicable Limits of Liability.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. In the event two or more **Claims** arise out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions, all such **Claims** shall be treated as a single **Claim**. Whenever made, all such **Claims** shall be considered first made and reported to the Company during the **Policy Period** in which the earliest **Claim** arising out of such negligent act, error or omission was first made and reported to the Company, and all such **Claims** shall be subject to the same Limit of Liability.

Limits of Liability apply above the retention amount stated in the Declarations.

D.   Retention Provisions

The retention amount stated in the Declarations shall be paid by the Insured. The retention amount applies to each **Claim**, and it includes **Damages**, and/or **Claim Expenses**, whether or not a loss payment is made. If the Company initially pays the retention amount, the Named Insured shall reimburse the amount paid within thirty (30) days. Failure of the Insured to remit amounts due in connection with settlements, judgments and loss adjustment expenses under this Policy, or any Policy of which this Policy is a renewal, shall be deemed to be equivalent to non-payment of premium, and may be used as a reason for cancellation. The Insured agrees to pay fees and expenses incurred in efforts to recover from the Insured any unreimbursed amounts.

E.   Covered Persons and Entities

1.   Named Insured as stated in the Declarations and its Subsidiaries;

2.   Any present or former principal, partner, officer, director, or employee of the

Named Insured or its Subsidiaries, but only as respects Professional Services rendered on behalf of the Named Insured;

3. Heirs, executors, administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to Professional Services rendered prior to such Insured's death, incapacity or bankruptcy.

4. Independent contractors of the Named Insured, but only as respects **Professional Services** rendered on behalf of the Named Insured.

For the purposes of this section, "subsidiaries" is defined as: for-profit entities of which the Named Insured has **Management Control**.

If during the Policy Period, the Named Insured acquires or creates a for-profit entity of which the Named Insured has **Management Control**, such entity shall be considered an Insured under this Policy from the date of the acquisition or creation, but only for acts, errors, or omissions committed after the date of acquisition or creation.

If the assets or revenues of the new for-profit entity is greater than 10% of the assets or revenues, respectively, of the Named Insured prior to the acquisition or creation of the new for-profit entity, coverage beyond 90 days of the date of said acquisition or creation will only apply if the following is completed within the 90-day period: a) Written notice of such acquisition or creation is provided to the Company; b) the Named Insured provides the Company with information that it may require; c) the Insured accepts any special terms, conditions, exclusions, or additional premium charges as may be required by the Company; and d) the Insurers, at their sole discretion, agree to provide such coverage.

**F.     Covered Territory**

This Policy applies to covered **Claims** arising out of negligent acts, errors, or omissions, **Advertising Liability or Personal Injury** committed by, and **Claims** made against the Insured anywhere in the world, provided that such **Claims** are first made within the United States of America, its territories or possessions, Puerto Rico or Canada.

**G.     Extended Reporting Period**

1. If the Policy is not renewed for any reason, or is canceled for any reason other than for non-payment of premium (whether cancelled by the Company or by the Insured), the following Extended Reporting Period options may apply, but only for **Claims** resulting from negligent acts, errors or omissions committed before the termination date of the Policy and otherwise covered by this Policy. An Extended Reporting Period extends the time for reporting a **Claim** under the Policy past the expiration date of the Policy, but does not otherwise alter or increase coverage.

   a. **Automatic Extended Reporting Period:** If the Named Insured has not obtained another insurance policy covering **Professional Services** after the expiration date of this Policy, the Company shall provide to the Named Insured an automatic, non-cancelable Extended Reporting Period starting at the termination of the **Policy Period**, but only for <u>Claims resulting from negligent acts, errors or omissions committed before the termination date of</u>

the Policy which are otherwise covered by this Policy. This automatic Extended Reporting Period will terminate at the earlier of the following dates: (a) after sixty (60) days or (b) at 12:01 A.M. on the date that another insurance policy covering the Professional Services of the Named Insured takes effect.

b.  **Optional Extended Reporting Period:**  Alternatively, the Insured has the right to purchase an Extended Reporting Period for a period of twelve (12) months after the Policy terminates, but only for Claims resulting from negligent acts, errors or omissions committed before the termination date of the Policy which are otherwise covered by this Policy.

The premium for this Extended Reporting Period shall be 100% of the full annual premium set forth in the Declarations and attached endorsements. The Named Insured must elect such coverage and pay the additional premium to the Company within sixty (60) days after the effective date of the Policy's termination.   Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

The Optional Extended Reporting Period will be added by endorsement, and once endorsed, cannot be cancelled.

2.  An Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are included within, and not in addition to the Limits of Liability set forth in the Declarations.

**PART II.     Exclusions**

This Policy does not apply to any Claim or Claim Expenses:

A.  Based upon or arising out of any intentional, willful, criminal, fraudulent, malicious, or dishonest act or omission by an Insured; except where the Claim also includes allegations of a negligent act, error or omission in the performance of your Professional Services; however, this Policy will not pay any Damages or further Claim Expenses in the event of an adjudication or admission by an Insured that the act or omission was intentional, willful, criminal, fraudulent, malicious, or dishonest.

B.  Based upon or arising out of infringement of copyright, patent, trademark, trade name, service mark, trade dress, title or slogan.  However, this exclusion does not apply to infringement of copyright, trademark, trade name, service mark, trade dress, title or slogan, arising from **Advertising Liability.**

C.  Based upon or arising out of any business entity not named in the Declarations or an Endorsement to this Policy for which the Insured does not have **Management Control.**

D.  Based upon or arising out of a Claim by one Insured under this Policy against another Insured under this Policy.

E.  Based upon or arising out of liability of any type assumed by an Insured under a contract or agreement, including breach of an express or implied warranty or guarantee.  This exclusion does not apply to liability that an Insured would have in the absence of the

contract or agreement.

F.    Based upon or arising out of false advertising or misrepresentation in advertising, or
      unfair competition based thereon, but only with respect to intentionally false, misleading,
      deceptive, fraudulent or misrepresenting statements in advertising the insured's own
      product or service.

G.    Brought by any regulatory authority or administrative actions by a federal, state or local
      governmental entity, including but not limited to: any actions, decisions, orders or
      proceedings by any federal, state or local governmental agency.

H.    Based upon or arising out of the failure to find, identify, report, remediate, prescribe a
      solution to, or otherwise based upon or arising out of any of the following:
      (1.) mold, fungi, bacteria, viruses, mildew, mycotoxins, spores, biogenic aerosol, or any
           byproducts thereof;
      (2.) silica, asbestos, asbestos compounds or materials containing asbestos;
      (3.) lead, lead-based, or lead-containing substances; or
      (4.) radon.

I.    Based upon or arising out of **bodily injury** to any person, resulting from any cause. This
      includes **bodily injury** directly or indirectly arising out of supervision, training, hiring,
      disciplining, or termination of one or more employees or failure to train, supervise,
      discipline, or terminate one or more employees.

J.    Based upon or arising out of **Property Damage** arising out of **Products.**

K.    Based upon or arising out of advice regarding or failure to advise, provide, require, obtain
      or maintain any form of insurance, suretyship, or bond.

L.    Based upon or arising out of estimates or opinions of real estate value.

M.    Based upon or arising out of geological surveys, soil compaction surveys, surveys of
      subsurface condition, or ground testing, or earth movement such as earthquake,
      landslide, or earth sinking, rising or shifting for any reason.

N.    Based upon or arising out of the actual, alleged, or threatened existence or **Release of
      Pollutants** at any time. This includes the failure to detect, report, test for, monitor, clean
      up, remove, contain, treat, detoxify, neutralize or any way respond to, or assess the
      existence, non-existence or effects of **Pollutants,** or any request, demand, or order for
      any of the above, or **Claims** by or on behalf of a governmental authority or others, for
      **Damages** because of testing for, identifying, detecting, monitoring, cleaning up,
      removing, containing, treating, detoxifying, neutralizing, communicating information
      about, in any way responding to, or assessing the existence, non-existence or effects of
      **Pollutants,** including the failure to perform any of these activities. This also includes the
      inhalation of, ingestion of, or exposure to **Pollutants.**

O.    Based upon or arising out of synthetic stucco and external insulation and finish systems
      (EIFS), or any part thereof, or any substantially similar system or any part thereof,
      including the failure of and the improper installation of the foregoing, and the application
      or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in
      connection with such a system.

P.      Based upon or arising out of underground storage tanks..

Q.      Based upon or arising out of the return, restitution, disgorgement, forfeiture or rescission of any personal profit, remuneration or financial advantage, or monies to which an Insured was not entitled.

R.      Based upon or arising out of any Claim covered by a Comprehensive General Liability policy, Commercial General Liability, Package Policy, Manuscript Policy or policy forms of a similar nature, which was in effect for the Insured at the Inception Date of this Policy.

S.      Based upon or arising out of or alleging or resulting, directly or indirectly, from:

1).     facts alleged, or the same acts or series of continuous, repeated, or related acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy which this Policy is a renewal of or replacement of or succeeds in time;

2)      any act, circumstance, or event committed, omitted, or occurring prior to the Policy Period if, on or before the First Inception Date, the Named Insured knew or could have reasonably foreseen that such act, circumstance, or event could give rise to a Claim against a Named Insured; or,

3)      as of the First Inception Date, any pending or prior: (i) Claim, demand, suit, arbitration, mediation, or litigation, or (ii) administrative, bankruptcy, regulatory proceeding, or investigation, of which an Insured had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior Claim, demand, suit, arbitration, mediation, litigation, or administrative bankruptcy, or regulatory proceeding or investigation.

## PART III.    Definitions

A.      Advertising Liability means injury arising out of one or more of the following offenses, in relationship to the Insured's own promotional activities:

1.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
2.      Oral or written publication of material that violates a person's right of privacy or publicity;
3.      Infringement, during the course of promotional activities, of copyright, trademark, trade name, service mark, trade dress, title or slogan.

B.      Bodily Injury means physical or mental harm, mental anguish, emotional distress, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time. This includes all effects of sexual acts, including rape, sexual molestation, non-consensual sex, or sexual assault.

C.      Claim means a written demand for money or services received by the Insured, including service of suit and including declaratory judgment actions or the demand for arbitration

proceedings against the Insured.

D.    **Claim Expenses** means expenses incurred by the Company or the Insured with the Company's consent, in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and include:

1.    Attorney fees;

2.    Costs assessed against the Insured in any **Claim** defended by the Company;

3.    Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court, that part of the judgment within the applicable Limit of Liability;

4.    The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable Policy limit, and only if said **Claim** is covered by the Policy;

5.    Reasonable expenses incurred by the Insured at the Company request other than:

   a.    Loss of earnings;

   b.    Salaries or other compensation paid to the Insured or any employee of the Insured.

E.    **Damages** means monetary judgment, award or settlement, except those for which insurance is prohibited by law.   **Damages** does not include punitive or exemplary **Damages**, fines, penalties, sanctions, taxes, awards or **Damages** that are multiples of any covered fees, deposits, commissions or charges for goods or services. **Damages** does not include any amounts that represent, or are substantially equivalent to, the return, restitution, disgorgement, forfeiture or rescission of any personal profit, remuneration or financial advantage, or monies to which an Insured was not entitled.

F.    **First Inception Date** means the inception date of the first errors and omissions, professional, media or other liability policy that (i) provides or provided the same or essentially the same coverage as this Policy and (ii) was issued by Gotham Insurance Company, New York General and Marine Insurance Company, or any member of the NYMAGIC, Inc., group of companies, to the Named Insured and continually renewed through to the Policy Period of this policy.

G.    **Management Control** means either having the right or power to select a majority of the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of a management board of a limited liability company, due to either: a) owning interests representing more than 50% of the voting, appointment, or designation power for the entity, or b) having the right, pursuant to a written contract, to elect, appoint, or designate these persons.

H.    **Personal Injury** means injury, other than **Bodily Injury** or **Advertising Liability**, arising out of one or more of the following offenses:

MAR-17-2009   14:20        Excel Underwriters Inc.                      8567677590      P.010

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution;

3.  Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  Libel, slander, defamation of character, or violations of a person's right of privacy, unless arising out of promotional activities.

I.  **Policy Period** means the period of time stated in the Declarations, or any shorter period resulting from Policy cancellation or amendment to the Policy.

J.  **Pollutants** means any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, **silica, asbestos, asbestos compounds or materials containing asbestos**, waste or any like substances.  In addition to Pollutants to be disposed of, waste also includes materials to be recycled, reconditioned, or reclaimed. The term "pollutants" shall include products which have **Released** from tanks, drums, pipelines, hoses or any other conveyance or container and, as a consequence, pose a threat to health or the environment.

K.  **Products** means any tangible goods or products, other than real property, manufactured, sold, handled, distributed, installed, or disposed of by an Insured or anyone on behalf of the Insured.  This includes containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

L.  **Professional Services** means those items listed as Professional Services in the Declarations.

M.  **Property Damage** means physical injury to or destruction of tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured. Electronic data is not considered tangible property.

N.  **Release** means discharge, dispersal, seepage, migration, release or escape of **pollutants**.

O.  **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission, **Advertising Liability**, or **Personal Injury** must have taken place in order to be considered for coverage under this Policy.

**PART IV.    Conditions**

A.  **Notice of Claim or Circumstances**

i.  **Claims:**
    a.  During the Policy Period or Extended Reporting Period, if applicable, the

MAR-17-2009  14:20        Excel Underwriters Inc.                    8567677690    P.011

Insured must immediately send copies to the Company of any legal notices, summonses, complaints, or legal papers received in connection with any **Claim**, and must authorize the Company to obtain records and other information.

    b.  The **Insured** must send any **Claims** other than legal notices, summonses, complaints, or legal papers to the Company as soon as practicable, but in no event later than 60 days after receipt by the Insured, and must authorize the Company to obtain records and other information.

ii.   Incidents or Notices of Circumstances: At any time during the Policy Period or Extended Reporting Period, if applicable, the Insured must notify the Company, as soon as practicable, of an act, error, omission, incident, circumstance, occurrence or offense that may reasonably be expected to result in a **Claim**.

    The Insured shall include within any such notice (called a "notice of circumstances"), the following information, with specificity, to the extent known by the Insured at the time of such notice:

    A.  a description of the alleged act, error, omission, incident, circumstance, occurrence or offense and;

    B.  the date(s) it was committed or happened, and;

    C.  a summary of the facts, and;

    D.  the alleged or potential **Damages** that may result from the act, error, omission, incident, circumstance, occurrence or offense and;

    E.  the names of any claimants, and;

    F.  the names of any other Insured(s) involved, and;

    G.  the names of any employees who committed or allegedly committed the act, error, omission, and;

    I.  the date and circumstances by which the Insured(s) first became aware of such loss.

3.  A **Claim** shall be considered to be reported to the Company when notice is first given to the Company by or through the Named Insured in the Declarations.

4.  An act, error, omission, incident, circumstance, occurrence or offense that may reasonably be expected to result in a **Claim** shall be considered to be reported to the Company when notice of circumstances is first given to the Company by or through the Named Insured in the Declarations, including the details enumerated in the above subparagraph 2. Should a **Claim** later result from the act, error, omission, incident, circumstance, occurrence or offense in the notice of circumstances, then that resulting **Claim** shall be deemed to have been timely reported under this subsection **A. Notice of Claim or Circumstances.**

MAR-17-2009  14:21        Excel Underwriters Inc.            8567677590    P.012

5.  All Claims arising out of the same, continuing or related Professional Services shall be considered a single Claim and deemed to have been made at the time the first of the related Claims is reported to the Company and shall be subject to one Limit of Liability.

**B.      Prohibition of Voluntary Payments and Settlements by Insured**

With respect to any Claim covered under this Policy, the Insured shall not, except at the Insured's own expense, make any payment, admit liability, settle Claims, assume any obligation, agree to arbitration or any other means of dispute resolution, waive any rights or incur any expenses without prior written approval by the Company.

**C.      Cooperation Clause**

The Insured shall cooperate with the Company in the conduct of the investigation and defense of a Claim, and upon the Company's request, submit to examination and interrogation by the Company representatives, under oath if required, and attend hearings, depositions, and trials, and assist in affecting settlements, securing and giving evidence, and in obtaining the attendance of witnesses. The Insured agrees to promptly tender the defense of any Claim to any other insurer which also has available insurance for a Claim covered under this Policy.

**D.      Notice of Cancellations and Non-renewal**

The Named Insured may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

For other than non-payment of premium, the Company will give the Named Insured sixty (60) days written notice prior to cancellation or non-renewal of this Policy by mailing or delivering the notice to the first Named Insured's last known mailing address. If the Company cancels the Policy due to the Named Insured's failure to pay a premium when due, this Policy may be canceled by the Company giving not less then 10 days written notice of cancellation.

The cancellation notice will state the effective date of the cancellation, and the Policy will terminate on that date. If canceled by the Company, the earned premium shall be computed pro-rata.  If canceled by the Insured, the earned premium shall be computed short rate.

**E.      Authorization**

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to the giving and receiving of all notices, exercising of the **Extended Reporting Period** option, canceling of the Policy, paying of all premiums and retentions, and the receiving of any return premiums that may become due.

**F.      Change**

This Policy contains all of the agreements concerning the insurance provided.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of

this Policy with the Company's consent. The Policy terms can be amended or waived only by endorsement issued by the Company, and made a part of this Policy.

**G.    Subrogation**

In the event of any Claim under this Policy, the Company shall be subrogated to all Insured's rights of recovery against any person or organization, and the Insured shall execute and deliver instruments and papers, and do whatever else is necessary to secure such rights. The Insured shall do nothing after the loss to prejudice such rights. The Insured shall not waive the companies right of recovery in advance of any claim.

**H.    Other Insurance Clause, Excess Clause, and Pro Rata Clause**

This Policy is excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this Policy.

If it is determined that both this insurance and other insurance or self insurance apply to any Claim on the same basis, whether primary, excess or contingent, the Company will not be liable under this Policy for a greater proportion of the Damages or Claim Expenses than the applicable Limit of Liability under the Policy for such Damages bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such Claim.

**I.    Actions against the Insurer**

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this Policy, and until the amount of the Insured's obligations to pay have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant, and the Company.

**J.    Non-transferability**

The Insured's rights and duties under this Policy may not be transferred without the written consent of the Company.

**K.    Coverage in bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this Policy.

**L.    Material Representations**

Statements made on the application, attachments, or other material representations made by the Insured, Insured's broker, and/or wholesale broker are accepted as true and material in the decision to underwrite the services described in the Declarations as PROFESSIONAL SERVICES. Any fact materially represented, if not true, may void this coverage.

### Notice to New York State Policyholders:

During the first several years of the claims-made relationship, claims-made rates are comparatively lower than occurrence rates, and the insured can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

MMO PROF LIAB 1/09

Named Insured:  Advanced Insurance Brokerage of America, Inc.          Endorsement No.  1

Policy No:  IA10018209                                                  Effective Date:  02/28/2009

### SCHEDULE OF FORMS ENDORSEMENT

MMO PROF LIAB 01/2009 Professional Liability Coverage form Claims-Made
                                    Coverage

PLEND 320   Schedule of Forms Endorsement

PLEND 118   Nuclear Broad Form Exclusion

PLEND 150   Service of Suit

PLEND 347   Governmental Claims Buy Back

PLEND 152   Third Party Administrator

MANUSCRIPT #1   Additional Exclusion Endorsement

SIGNATURE        Signature Endorsement

All other terms and conditions of this Policy remain unchanged.

Plend 320

06-20-06
BrokerPRO<sup>SM</sup>

GOTHAM INSURANCE COMPANY 2001

Named Insured:  Advanced Insurance Brokerage of America, Inc.          Endorsement No. 2

Policy No:  IA10018209                                        Effective Date:  02/28/2009

It is agreed that this endorsement is attached to and hereby made a part of this Policy

### NUCLEAR BROAD FORM EXCLUSION

A.    This Policy does not apply:

    1.    To Loss:

        a.    with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        b.    resulting from the Hazardous Properties of Nuclear Material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any Agency thereof with any person organization; or

    2.    To Loss resulting from the Hazardous Properties of Nuclear Material, if:

        a.    the Nuclear Material (i) is at any Nuclear Facility owned by, or operated by or on behalf of an Insured (ii) has been discharged or dispersed therefrom;

        b.    the Nuclear Material is contained in spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        c.    the Loss arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such Nuclear Facility is located within the United Sates of America, its territories or possessions or Canada, this "exclusion c" applies only to Loss to such Nuclear Facility and any property thereat.

B.    As used in this Endorsement:

    1.    "Hazardous Properties" include radioactive, toxic or explosive properties.

    2.    "Nuclear Material" means Source Material, Special Nuclear Material or Byproduct Material.

    3.    "Source Material" "Special Nuclear Material" and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    4.    "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

PLEND 118                              06-01-01

GOTHAM INSURANCE COMPANY 2001

5.   "Waste" means any waste material (a) containing Byproduct Material other than the tailing or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content and (b) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraph (a) or (b) thereof.

6.   "Nuclear Facility" means:

   a.   Any Nuclear Reactor;

   b.   Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium (ii) processing or utilizing Spent Fuel or (iii) handling, processing or packaging Waste;

   c.   Any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   d.   Any structure, basin, excavating, premises or place prepared or used for the storage or disposal of Waste and includes the site on which any of the foregoing is located, all operation conducted on such site and all premises used for such operations.

7.   "Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

8.   "Insured" means the Insured Organization and shall also mean the Insured Persons.

9.   "Loss" includes all forms of radioactive contamination of property.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein.  This endorsement is part of such policy and incorporated therein.

All other terms and conditions of this Policy remain unchanged.

**BrokerPRO<sup>SM</sup>**

Named Insured: Advanced Insurance Brokerage of America, Inc.          Endorsement No. 3

Policy No: IA10018209                                                  Effective Date: 02/28/2009

It is agreed that this endorsement is attached to and hereby made a part of this Policy

## SERVICE OF SUIT

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada and will comply with all requirements necessary to give such court jurisdiction and all matter arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon the Senior Claims Officer of MUTUAL MARINE OFFICE, INC., 919 THIRD AVE 10TH FLOOR, NEW YORK, NY 10022, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**BrokerPRO**$^{SM}$

Named Insured:  Advanced Insurance Brokerage of America, Inc.           Endorsement No. 4

Policy No:  IA10018209

Effective Date: 02/28/2009

It is agreed that this endorsement is attached to and hereby made a part of this Policy.

## GOVERNMENTAL CLAIMS LIMITED BUYBACK ENDORSEMENT

For purposes of this Policy, it is understood that Exclusion G. found in Part II Exclusions of this Policy is deleted in its entirety and is replaced by the following:

G.      Brought by any regulatory authority or administrative actions by a federal, state or local governmental entity, including, but not limited to: any actions, decisions, orders or proceedings by any federal, state or local governmental agency; however, notwithstanding this exclusion, the Company agrees to reimburse the Insured's reasonable **Claims Expenses** up to a total of $25,000 for the defense of regulatory or administrative actions which are otherwise covered by the terms and conditions of this Policy.

## ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

Plend 347                              03-28-08

Named Insured:  Advanced Insurance Brokerage of America, Inc.          Endorsement No.  5

Policy No:  IA10018209                                                 Effective Date:  02/28/2009

This endorsement is hereby attached to and made a part of this Policy

### THIRD PARTY ADMINISTRATORS

The following additional Exclusions are added to the Policy.

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

T.   the recommendation or approval or disapproval of any trust fund investments.

U.   or brought against the Insured, in the Insured's capacity as an Employer, based on any violation of the Employee Retirement Income Security Act of 1974 (Public Law 93-406) more commonly referred to as the Pension Act of 1974 or any amendments thereto or similar provisions of any federal, state, or local statutory law or common law.

V.   Intentional refusal or failure to pay or any intentional delay in paying any claim or obligation arising out of an insurance or benefit contract or plan, however, this exclusion shall only apply if insured knew that the claim or obligation was legitimate and compensable.

W.   act, error or omission in the performance of actuarial services.

X.   the commingling, conversion, misappropriation or defalcation of funds or other property.

Y.   failure of any real or personal property to have at any point or points in time any estimated, projected, represented, warranted or guaranteed economic values.

Z.   based upon, due to or involving directly or indirectly, the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any self-funded or practically self-funded insurance or benefit plan or trust.

AA.   any evaluation of proposed medical treatments to determine the necessity or efficacy of such proposed medical treatment(s).

BB.   any peer review, consultation or recommendation of options for medical treatment, including identification of conditions necessary to qualify for such treatment or the designation of the location where such treatment may occur.

CC.   due to or involving directly or indirectly, the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any insurance company or of any self-funded or partially self-funded insurance or benefit plan or trust.

All other terms and conditions of this Policy remain unchanged.

PLEND 152                         03-17-08

MAR-17-2009  14:21      Excel Underwriters Inc.                    8667677590     P.021

Named Insured:  Advanced Insurance Brokerage of America, Inc.          Endorsement No.  6

Policy No:  IA10018209                                                 Effective Date: 02/28/2009

It is agreed that this endorsement is attached to and hereby made a part of this Policy.

## ADDITIONAL EXCLUSION

The following Exclusion(s) is added to Part II of the policy:

DD.  based upon or arising out of Utilization Review

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

BrokerPRO[SM]

# SIGNATURE ENDORSEMENT

The Policy to which this Endorsement is attached is insured by the

## GOTHAM INSURANCE COMPANY

**IN WITNESS WHEREOF,** The Issuing Company has caused this policy to be executed below, but this Policy shall not be valid unless countersigned by Mutual Marine Office, Inc., or by a duly authorized agent of the Company.

Secretary                                President

Executed in New York

This 17th day of March, 2009

**MUTUAL MARINE OFFICE, INC.**
Authorized Representative and
Managing General Agent
for the Company designated above

By

Attached to and forming part of Policy MMO –IA10018209 of the Mutual Marine Office, Inc.

| | | Mutual Marine Office, Inc. |
|---|---|---|

MAR-17-2009  14:21      Excel Underwriters Inc.                    8667677690    P.023

# THE *BROKERPRO*<sub>SM</sub> ASSISTANCE &
# RISK MANAGEMENT HOTLINE

As a Gotham Insurance Company policyholder, your firm is entitled to
FREE CONSULTATION SERVICES
with attorney Byron Hollins.

Byron may be contacted at:
## (877) 976-7288
(during normal business hours, Pacific Standard Time)

or c/o:
Hollins & Levy LLP
23801 Calabasas Road
Calabasas, CA 91302
Telephone (818) 223.0300
Facsimile (818) 223.0310
Byron@hollinslevy.com

Please, have your policy number ready, and call with questions
regarding loss prevention, problem clients, and engagements.

**PLEASE NOTE: USE OF THIS SERVICE DOES NOT
CONSTITUTE NOTIFICATION OF A CLAIM TO GOTHAM
INSURANCE COMPANY UNDER YOUR POLICY.**

Claims or potential claims must be reported to Gotham
Insurance Company/Mutual Marine Office, Inc.
as stated in your Policy.
Reporting can be done by calling (800) 367-0224 or via email
to *djoiner@nymagic.com*.
Other matters may be referred to your retail insurance representative.